**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JENNIFER M. HAYES, | : | CIVIL NO. 1:24-cv-02103 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

## I.  Introduction.

In this social security action, Plaintiff Jennifer M. Hayes ("Hayes") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1* to *12-7*.[1] On May 10, 2022, Hayes filed an application for disability insurance benefits and an application for supplemental security income, alleging that she has been disabled since October 18, 2021. *Admin. Tr.* at 210–11. After her claim was denied at the initial and reconsideration levels of administrative review, Hayes requested an administrative hearing. *Id.* at 139–42. On December 5, 2023, Hayes—who was represented by counsel—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Jarrod Tranguch (the "ALJ"). *Id.* at 37–65. On February 22, 2024, the ALJ denied Hayes's claim for benefits. *Id.* at 17–36. Hayes appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1–5. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On December 5, 2024, Hayes, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See doc. 1*. She requests that the court reverse the Commissioner's decision and award her benefits or, in the alternative, remand the case for further

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Hayes's claims.

proceedings. *Id.* at 2 (Wherefore Clause).  She also seeks attorney's fees and "such other and further relief that the Court deems just and proper." *Id.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10.*  The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 11–12.*  The parties filed briefs (*see docs. 15, 17–18*), and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Hayes is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[2]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar.

---

[2] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Hayes met the insured-status requirements through September 30, 2026. *Admin. Tr.* at 19.

22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any

6

non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On July 30, 2024, the ALJ denied Hayes's claim for benefits. *Admin. Tr.* at 17–36.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Hayes had not engaged in substantial gainful activity since October 18, 2021—the alleged onset date. *Id.* at 19.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Hayes had the following severe impairments: "attention-deficit hyperactivity disorder (ADHD), generalized anxiety disorder, and major depressive disorder."[3] *Id.* at 20. The ALJ also concluded that Hayes's genital herpes, glaucoma, and gastroesophageal reflux disease were not severe impairments. *Id.*

In concluding that glaucoma was not a severe impairment, the ALJ cited to Hayes's ophthalmology treatment records during the period at issue. *Id.*  The ALJ found Hayes's treatment records noted "no associated symptoms" and that she is treated with eye drops. *Id.*  The ALJ also recognized "the treatment records are

---

[3] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

devoid of significant vision loss or other visual abnormalities and her glaucoma was reportedly stable in September 2023." *Id.*

The ALJ further relied on the medical opinions in the record.  Specifically, he considered and found partially persuasive the opinion of state agency medical consultant Louis Joseph Tedesco, M.D., who opined that Hayes's glaucoma was non-severe. *Id.* at 20, 68.  He also considered and found persuasive the opinion of state agency medical consultant Esther Marie Kim, M.D., who opined that Hayes's physical impairments were non-severe.[4] *Id.* at 20, 92.  And most relevant to the instant claim, the ALJ considered the opinion of Hayes's treating ophthalmologist Mark Grohol, O.D. ("Dr. Grohol"). *Id.* at 21.  Dr. Grohol opined that Hayes has "no limitation in relation to her vision or visual field to perform any work duties and that she will not be off-task or absent from work." *Id.* at 21, 535–538.  The ALJ found Dr. Grohol's opinion persuasive given it is "generally consistent with and supported by the evidence." *Id.*

---

[4] In her brief, Hayes cites to a chart in the record to conclude that Dr. Kim found Hayes's glaucoma and low vision to be severe. *Doc. 15* at 12 n.1.  While the chart notes glaucoma as severe, it is unclear who authored it.  Indeed, Dr. Kim earlier refers to glaucoma as a non-severe impairment and that she uses eyedrops and only wears glasses for reading. *Admin. Tr.* at 92–93.

## C. Step Three.

At step three of the sequential-evaluation process, the ALJ found that Hayes did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21–23. Specifically, the ALJ considered Listings 12.02, 12.04, and 12.06. *Id.*

## D. The RFC.

The ALJ then determined that Hayes has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [T]he claimant can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation (SVP) level of 2, which are generally classified as unskilled. The claimant can understand, remember, and carry out simple instructions and perform simple, routine, and repetitive tasks. The claimant can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making and only occasional, gradual changes in the work duties and work setting. The claimant can have occasional interaction with coworkers and supervisors and perform jobs in which she could have no more than rare or incidental contact with customers or members of the general public.

*Id.* at 23. In making this RFC assessment, the ALJ considered Hayes's testimony and assertions regarding her limitations. *Id.* at 24. The ALJ concluded that although Hayes's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

10

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 24.  The ALJ also considered Hayes's medical records as to her mental impairments and the treatment she received. *Id.* at 24–25.  And he concluded that the medical records do not support greater limitations than those provided above and that Hayes does not experience symptoms or limitations related to her impairments to the extent she alleges. *Id.*

The ALJ also considered the medical opinions in the record and prior administrative findings entered into testimony. *Id.* at 25.  Specifically, he considered the June 2022 and December 2023 opinions of Matthew Berger, M.D. ("Dr. Berger"), who was Hayes's psychiatrist. *Id.* at 26–28.  The ALJ found Dr. Berger's opinions unpersuasive. *Id.*  Relevant to the claims in the instant case, the ALJ noted that there is "no indication that Dr. Berger examined or treated [] [Hayes] directly." *Id.* at 26. The ALJ further reasoned that Dr. Berger's opinions are "generally inconsistent with and not supported by the evidence." *Id.* at 26–27. As to the June 2022 opinion, the ALJ concluded the following:

> The undersigned finds this opinion not persuasive. There is no indication that Dr. Berger examined or treated the claimant directly. Additionally, the degree of limitations is not entirely consistent with or supported by the evidence. As to supportability, the claimant had a phone call visit with a PA-C at Dr. Berger's office two days later and reported being ok. She reported some anxiety and issues with ADD, but her sleep and appetite were good. The records note that her attention span and concentration were moderately impaired, but they also note clear, spontaneous, and fluent speech; thought process that

demonstrated coherent and logic; intact associative thinking; no reported hallucinations or delusions; she was oriented; she had intact memory skills; intact and realistic judgment; intact and appropriate insight; and she denied suicidal ideations. Additionally, these limitations are not entirely consistent with the treatment records, including the claimant's course of treatment to outpatient and telemedicine visits and remaining treatment records from Dr. Berger's office that generally reflect similar findings of mild to moderately impaired attention span and concentration skills, but were otherwise generally within normal limits, as noted above.

*Id.* As to the December 2023 opinion, the ALJ concluded the following:

The undersigned finds this opinion also unpersuasive, as it is generally inconsistent with and not supported by the evidence. Additionally, it is unclear as to when, if ever, Dr. Berger himself ever examined or met with the claimant. As for supportability, the most recent treatment records from his office, particularly from a thirteen-minute appointment in September 2023, signed by Mr. Vinnacombe indicate that the claimant reported "I'm ok" and noted some situational stress. She reported that she felt her medications were ok and "I am happy other than the stuff happening". A mental status examination at that time reflects moderately impaired attention span and concentration, but cooperative attitude; unchanged mood since her last visit; clear, fluent, and spontaneous speech; intact language processing; thought processes that demonstrate coherent and logic; intact associative thinking; no hallucinations or delusions; alert and oriented behavior; intact memory skills; knowledge and vocabulary consistent with her education; intact and realistic judgment; intact and appropriate insight; and no suicidality or homicidality. Additionally, these limitations are not entirely consistent with the treatment records, including the claimant's course of treatment to outpatient and telemedicine visits and remaining treatment records from Dr. Berger's office that generally reflect similar findings of mild to moderately impaired attention span and concentration skills, but were otherwise generally within normal limits, as noted above.

12

*Id.* at 27–28.  The ALJ then summarized the reasons for his RFC assessment:

> In sum, the above residual functional capacity assessment is supported by the preponderance of medical and non-medical evidence of record, including the claimant's course of treatment and activities of daily living. The claimant alleges limitations that would preclude the performance of substantial gainful activity on a full-time basis. However, the claimant's allegations are not entirely consistent with the medical and other evidence because a review of the entire record fails to reasonably support the nature, intensity, frequency, or duration or the limitations alleged by the claimant.

*Id.* at 28.

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Hayes was unable to perform her past relevant work. *Id.*  The ALJ accepted the testimony of the vocational expert that an individual of the same age, education, work experience, and RFC as Hayes would be unable to perform her past relevant work as a home attendant. *Id.*

### F.  Step Five.

At step five of the sequential-evaluation process, considering Hayes's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as hand launderer, housekeeper,

and document preparer—that exist in significant numbers in the national economy that Hayes could perform. *Id.* at 28–29.

In sum, the ALJ concluded that Hayes "has not been under a disability, as defined in the Social Security Act, from October 18, 2021, through the date of this decision." *Id.* at 31. Thus, he denied Hayes's claim for benefits. *Id.*

## V. Discussion.

Hayes presents two claims. First, she claims that the RFC is not supported by substantial evidence given the ALJ improperly evaluated the supportability and consistency of Dr. Berger's opinions. *Doc. 15* at 7–10. Second, Hayes claims the ALJ substituted his own lay opinion as medical evidence when assessing the impact of her glaucoma. *Id.* at 10–13.

### A. The ALJ did not err in his consideration of Dr. Berger's opinions.

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered the

14

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022).  On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with

15

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

Hayes argues the ALJ erred in evaluating the supportability and consistency factors of Dr. Berger's opinions. *Doc. 15* at 7–10. As to supportability, she claims the ALJ only cited to one instance where Hayes reported being okay. *Id.* at 9. As to consistency, Hayes challenges the ALJ's reference to the manner of Hayes's psychiatric treatment and Dr. Berger's involvement in her treatment. *Id.* at 9–10. Accordingly, Hayes claims the ALJ's articulation of supportability and consistency are insufficient.

Here, the ALJ analyzed Dr. Berger's opinions by evaluating their supportability and consistency. *Admin. Tr.* at 26–28. As to supportability, the ALJ referred to a phone call between Hayes and a PA-C at Dr. Berger's office where she reported being okay a few days after an appointment. *Id.* But the ALJ did not end his supportability explanation here. The ALJ noted that while Hayes reported some anxiety and ADD issues, her sleep and appetite were good. *Id.* at 27 The ALJ further noted that despite records showing a moderately impaired attention span and concentration, "they also note[d] clear, spontaneous, and fluent speech;

16

thought process that demonstrated coherent and logic; intact associative thinking; no reported hallucinations or delusions; she was oriented; she had intact memory skills; intact and realistic judgment; intact and appropriate insight; and she denied suicidal ideations." *Id.* The ALJ noted similar findings from a mental status examination when evaluating the supportability of Dr. Berger's December 2023 opinion. *Id.*

Regarding consistency, the ALJ reasoned that Dr. Berger's limitations "are not entirely consistent with the treatment records, including the claimant's course of treatment to outpatient and telemedicine visits and remaining treatment records from Dr. Berger's office that generally reflect similar findings of mild to moderately impaired attention span and concentration skills, but were otherwise generally within normal limits, as noted above." *Id.* at 27–28. Hayes claims the ALJ's conclusion is flawed as it pertains to his reference of Hayes's method of psychiatric treatment.[5] But the ALJ's consistency evaluation was not reliant on

---

[5] Hayes further contends that the ALJ "broadly concludes that Dr. Berger himself was not treating Plaintiff despite records demonstrating he did in fact oversee Plaintiff's psychiatric care for a lengthy period of time." *Doc. 15* at 9–10. But Hayes mischaracterizes the ALJ's reference to Dr. Berger's involvement. The ALJ stated that "[t]here is no indication that Dr. Berger examined or treated the claimant directly." *Admin Tr.* at 26. And when viewing the medical records cited by Hayes, they indeed demonstrate that each treatment note—except for one—is authored by a CRNP or PA-C and signed off by Dr. Berger. *Id.* at 556, 560, 564, 568, 572, 576, 582, 587, 592, 597, 602, 607, 611. Accordingly, we find ALJ did not materially misstate the evidence.

this consideration alone.  Moreover, the ALJ recognized earlier in his decision that Hayes's treatment was "limited to outpatient psychiatric follow-up appointments." *Id.* at 24.  He further remarked that treatment records demonstrated that "the examiner was unable to assess her mood and affect due to the telemedicine visit." *Id.* at 25.

As noted above, the ALJ must set forth reasons for his or her decision. *Burnett*, 220 F.3d at 119.  But the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, the "ALJ is merely required 'to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Watters ex rel. L.B. v. Colvin*, No. 3:13-CV-770, 2014 WL 1268566, at *6 (M.D. Pa. Mar. 26, 2014) (quoting *Jones*, 364 F.3d at 505).  The ALJ must explain the dispositive reasons for his or her decision. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).  And the ALJ's decision must be read as whole. *Jones*, 364 F.3d at 505.

Here, when read as a whole, the ALJ adequately explained why he found Dr. Berger's opinions unpersuasive, and the ALJ's decision is supported by substantial evidence. We, therefore, conclude that the ALJ did not err as to his evaluation of the opinion evidence.

**B. The ALJ did not err in regard to his treatment of Hayes's non-severe impairment.**

At step two, the ALJ found that Hayes had three severe impairments: ADHD, generalized anxiety disorder, and major depressive disorder. *Admin. Tr.* at 20. The ALJ did not find glaucoma to be a severe impairment. *Id.* Hayes argues that the ALJ incorrectly stated that she "has no associated symptoms" of glaucoma and is "treated with eye drops" despite medical records and testimony indicating otherwise. Accordingly, Hayes claims the ALJ's determination regarding glaucoma was made "without any medical opinions about the impact of Plaintiff's vision diagnoses on her work-related abilities." *See doc. 15* at 12. The Commissioner argues there is no error here because the ALJ properly evaluated the medical evidence regarding Hayes's vision impairment. *Doc. 17* at 14–15.

The ALJ found Hayes's glaucoma to be a non-severe impairment because treatment records indicated no associated symptoms and were devoid of significant vision loss or other vision abnormalities. *Admin. Tr.* at 20. The ALJ further noted that her condition is treated with eye drops and was reportedly stable in September 2023. *Id.* Hayes argues, however, that the ALJ failed to address her vision deficits as noted by Dr. Grohol, as well as her testimony concerning the same. But the ALJ explicitly relied on Dr. Grohol's opinion, which he found persuasive. *See id.* at 21. The ALJ recognized that Dr. Grohol "opined that the claimant has no limitation in relation to her vision or visual field to perform any work duties and that she will

not be off-task or absent from work." *Id.*  The ALJ further considered the opinions of the state agency medical consultants who found that Hayes's glaucoma is non-severe.[6] *Id.*  We, therefore, find that the ALJ did not err by failing to properly account for Hayes's impairments as they relate to her glaucoma.


## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

[6] Hayes further points to the fact that the state agency medical consultants did not formulate a physical RFC.  She argues this left the ALJ "without even a prior agency determination regarding the functional impact of Plaintiff's visual disorders." *Doc. 15* at 12 n.1.  But "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).